[Crim. Nos. 7113, 7114.   Second Dist., Div. Two.   Apr. 17, 1961.]

THE PEOPLE, Respondent, v. EDWARD JACKSON et al.,
Appellants.

(Two Cases.)

Samuel C. McMorris for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

McMURRAY, J. pro tem.*—Defendants appeal from judgments of conviction of violation of section 11530 of the Health and Safety Code, and from orders denying their motions for new trial. The facts surrounding these convictions are briefly as follows: That about 12 o'clock noon on August 21, 1959, two officers of the Los Angeles Police Deuartment and two agents of the California State Bureau of Narcotics established surveillance over appellants' residence at Compton, California. Before going to the location the address had been checked with another agent of the State Narcotics Bureau, who informed the officers that the house under surveillance was that of appellants. Edward Jackson had been convicted of a prior offense involving narcotics.

While the four officers were at a vantage point near appellants' house, a car drove up to the house and stopped. It was occupied by three people, two young men and a girl. The two young men got out of the car and went into appellants' house where they remained less than five minutes, came out and got back into the car and drove off.

The four officers followed the car for about three blocks from appellants' residence, when they stopped it and questioned the occupants. The young men stated that they had been to appellants' house and one of them said that on previous occasions he had picked up "bennies" from the location. The officers searched the occupants and the car and found a package of brown cigarette papers. One of the young men in the car stated that he knew that Edward Jackson dealt in marijuana; that Edward Jackson was not at home at that time, but that he was expected shortly, and that there were five or six people in the house waiting for him to come home. The officers then returned to appellants' house and noticed that a car was parked in the driveway, which later turned out to belong to appellant Edward Jackson. One of the policemen and one of the State Narcotics agents went to the front door, the other policeman and the other agent went to the rear door.

The police officer knocked at the front door; the appellant Edward Jackson answered. The officer showed his badge and identified himself and the agent as police officers. The appellant stepped back from the doorway, the officers entered. Simultaneously, the other police officer and the other narcotics agent appeared at the rear door of the house; that

---

*Assigned by Chairman of Judicial Council.

door was open and a woman was standing by it. When the police officer heard his companion's voice at the front of the house, he entered through the rear door. One of the police officers told appellant Edward Jackson that the officers were on a narcotics investigation and asked if he had narcotics in the house; Edward Jackson answered "No." The officer then asked if he and the other officers could search the house, and Edward Jackson replied: "Go ahead, you won't find it." The officers ordered the occupants of the house to stay where they were and not to move around.

One of the occupants was observed by one of the agents to be running into the bedroom. The agent pursued him into the bedroom. The officers made a thorough search of the premises and found the following items: a large paper bag which was standing open on the kitchen floor containing a green leafy substance which resembled marijuana; a paper bag which was located on the top of the washing machine near the back door of the house containing a green leafy substance resembling marijuana; a paper bag containing a baby shoe box and other debris recovered from a wastebasket in the front bedroom of the house; a white bottom part of a cardboard box containing a newspaper and some green leafy substance found in the back bedroom of the house on top of a dresser and on the bedroom floor; three smoking pipes found in a drawer of a bureau against the west wall of the front bedroom; a torn paper bag containing an empty carton within which were two white cartons containing 21 packages of zigzag wheat straw cigarette paper found in a cabinet in the hallway of the house.

Appellants told one of the officers that they had lived in the house over a year.

At the time the officers entered the house, appellants, a Mr. Pollard, a Mr. and Mrs. Ware and a baby were present. All of the occupants were searched. No narcotics were found upon the person of anyone. The appellants stated that they occupied the front bedroom of the house. It was in this bedroom that the baby shoe box was found in the wastebasket, and where the smoking pipes were found. The paper bag found on the kitchen floor was found to contain approximately one pound of marijuana; the bag found on top of the washing machine near the rear door also contained a few milligrams of marijuana, as did the paper bag containing a shoe box and other debris which was recovered from the wastebasket in the front bedroom. The white bottom part of the cardboard

box containing a newspaper and some green leafy substance proved to contain about four ounces of marijuana; two of the smoking pipes contained residue from marijuana being smoked in them.

On this appeal it is urged that appellants' request for a continuance to present witnesses should have been granted; that the evidence presented was obtained illegally in that the action of the police was ultra vires since policemen of the Los Angeles Police Department made an arrest and search of the appellants in the city of Compton without a warrant; and, also, that the arrest was without probable cause since the officers did not act on reliable information, and since there was no consent to the search. It is further contended that the evidence was insufficient to convict because the possession by the appellants was not proven, and because the rule which requires that the trier of fact acquit the defendant when proved circumstances are as consistent with a theory of innocence as with guilt should have been here applied and resulted in the acquittal of the appellants.

The People contend that the appellants were arrested upon probable cause, based upon evidence obtained as a result of a lawful search, and that such evidence was properly admitted at the trial. ■■■ Whether or not consent was given to a search is a factual issue to be determined by the trial court, and if such finding is supported by substantial evidence, it is final. (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Hood,* 149 Cal.App.2d 836, 838 [309 P.2d 135].) ■■■ The appellants, by their presentation here, in effect urge this court to accept testimony favorable to them and reject the testimony given by the People. This cannot be here done. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Such an issue may not be redetermined on appeal "unless it appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support it." (*People* v. *Melody,* 164 Cal.App.2d 728, 734 [331 P.2d 72].) ■■■ With the above in mind, if the trial court found, as it impliedly did find, that there was consent to the search, it is unnecessary for the People to show that the search was made with a warrant or with probable cause or as an incident to a lawful arrest. (*People* v. *Burke,* 47 Cal.2d 45, 48-49 [301 P.2d 241]; *People* v. *Melody, supra.*)

Two of the officers participating in the arrest and search testified that appellant Edward Jackson's consent was requested and given prior to the search; that he told them to

go ahead. ■ The appellants argue, in effect, that even if there was a consent here, it was not voluntary but was coerced and was consequently tantamount to no consent at all, (referring to *People* v. *Burke, supra*) ; however, when as here the officers testified that consent to search was asked for and received from one of the appellants, the language in the Burke case, *supra,* contained at page 49 that: ". . . a holding that as a matter of law defendant acted because of an unlawful assertion of authority by the officers would be unjustified," must govern.

■ Even though the consent to the search was here given by only one of the appellants, such consent suffices. (*People* v. *Silva,* 140 Cal.App.2d 791, 794-795 [295 P.2d 942].) The People submit that under the facts here the officers certainly had the right to make inquiry of appellants. ■■ This must be conceded, and it was not unreasonable for them to interview the appellants. (*People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].)

The consent given by appellant, Edward Jackson, to the search of the house appears to be the justification for the action of the officers in conducting such a search.

■ The appellants' contention that the evidence was obtained illegally since the action of the police officers was ultra vires as the search was conducted in the city of Compton by Los Angeles Police officers raises a question, but it would not appear to invalidate the arrest where they merely assisted two members of the State Division of Narcotics Enforcement. Penal Code, section 836, provides that a peace officer may make an arrest without a warrant "1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." The words "peace officer" as used in the Penal Code include "a policeman of a city or town" and also the "chiefs and inspectors of the Division of Narcotic Enforcement." (Pen. Code, § 817.) Two of the officers here active were inspectors of the Division of Narcotic Enforcement who were performing their duties in conducting this investigation; the fact that two city of Los Angeles police officers accompanied them does not impair their authority to act. The search being valid since it was made with the consent of appellant Edward Jackson, and such search having disclosed reasonable cause to believe that appellants had committed a felony in the presence of the arresting officers, namely, possessing marijuana, the officers acted within their authority.

The appellants' contention that the trial judge abused his discretion in denying a continuance does not find support in the record.

The appellants' contention that the possession of the marijuana found was not sufficiently shown to sustain the conviction of the appellants here is without merit. The finding of substantial quantities of narcotics in appellants' residence under the circumstances here disclosed where appellants admit having lived in the house for about a year, together with the smoking pipes found in the bureau drawer in appellants' bedroom should support the implied finding of joint possession by appellants. (See *People* v. *Cardenas,* 118 Cal.App.2d 9 [256 P.2d 1055]; *People* v. *Crews,* 110 Cal. App.2d 218 [242 P.2d 64]; *People* v. *Bretado,* 178 Cal.App.2d 465 [3 Cal.Rptr. 216]; *People* v. *Woods,* 108 Cal.App.2d 50 [238 P.2d 124].) In any event, the implied finding by the trial court of constructive joint possession of the contraband may not be disturbed on appeal since it is supported by substantial evidence. (*People* v. *Poe,* 164 Cal.App.2d 514, 516 [330 P.2d 681]; *People* v. *Lama,* 129 Cal.App.2d 391, 393 [276 P.2d 816].)

Appellants' contention that the evidentiary guide to be applied by a trier of the fact when proven circumstances are as consistent with the innocence as with the guilt of a defendant should, of necessity, have resulted in an acquittal is not here valid. It is aptly said in *People* v. *Newland, supra,* 15 Cal.2d 678 at pages 681-682: "If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. [Citations.] In the Perkins case [*People* v. *Perkins,* 8 Cal.2d 502 (66 P.2d 631)] this court expressly rejected the application of the statement from the Staples case [*People* v. *Staples,* 149 Cal. 405 (86 P. 886)] to a situation which involved only circumstantial evidence. As pointed out by the court the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review." (See also *People* v. *Basco,* 121 Cal.App.2d 794, 797 [264 P.2d 88].)

The information here erroneously charged violation of section 11500 instead of 11530 of the Health and

Safety Code, but this is not raised by the appellants and the court, in its judgment, found appellants guilty of violating the latter section. The charging language in the information, however, charged appellants with feloniously having in their possession marijuana and from the adequate reporter's transcript before the court, it appears that they were not misled as to the charge against them. ▆ In any event, it has been held that if the acts constituting the offense are sufficiently stated, the information is sufficient. (*People* v. *Phipps,* 39 Cal. 326, 331-332; *People* v. *Severino,* 122 Cal.App.2d 172, 179 [264 P.2d 656].)

The judgments and orders are affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied June 14, 1961.