Filed 10/23/13  P. v. Clifton CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C071446 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F1001) |
| v. | |
| MICHAEL ANGELO CLIFTON, | |
| Defendant and Appellant. | |

Defendant Michael Angelo Clifton committed the crime of possessing pseudoephedrine with the intent to manufacture methamphetamine.  (Health & Saf. Code, § 11383.5, subd. (b)(1).)  Convicted by jury of the crime and placed on probation, defendant appeals.  He contends:  (1) the trial court erred by not instructing the jury on several lesser offenses, (2) his statement to police should have been suppressed, and (3) the evidence was insufficient to support the conviction.  Finding no error, we affirm.

1

FACTS

Officer Todd Cogle of the Redding Police Department stopped a vehicle driven by Jeffrey Longmire, whom Officer Cogle suspected of manufacturing methamphetamine. Defendant was the front seat passenger. Officer Cogle observed defendant trying to hide something. After Officer Cogle and other officers detained the occupants of the car, including backseat passengers, a search of the car revealed a bag containing pseudoephedrine tablets on the console between the driver and front passenger seats. Two partially crushed tablets were on the front passenger seat. Also found were several broken blister packs that had contained pseudoephedrine tablets on the passenger side floorboard.

Defendant admitted that he had been buying pseudoephedrine to give to Longmire to manufacture methamphetamine. In return for making the purchases, Longmire had supplied defendant with methamphetamine. Defendant had no tablets on his person, and his hands were not stained with red dye. The search of Longmire's car also revealed equipment for methamphetamine manufacture in the trunk.

DISCUSSION

I

*Instructions on Lesser Included Offenses*

Defendant contends that the trial court prejudicially erred by not instructing the jury, on its own motion, on three lesser offenses. The contention is without merit.

Defendant argues that the trial court should have instructed on "at least" three lesser offenses: (1) *attempted* possession of pseudoephedrine with intent to manufacture methamphetamine (Health & Saf. Code, § 11383.5, subd. (b)(1); Pen. Code, § 664); (2) possession of pseudoephedrine with intent to sell for manufacture of methamphetamine (Health & Saf. Code, §11383.7, subd. (b)(1)); and (3) furnishing

2

pseudoephedrine with knowledge that recipient will manufacture a controlled substance (Health & Saf. Code, §11104, subd. (a)).

A.    *Relevant Law*

"California decisions have held for decades that even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser. [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 118.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense [elements test], or the facts actually alleged in the accusatory pleading [accusatory pleading test], include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*Id*. at pp. 117-118.)

B.    *Analysis*

Defendant did not request instructions on any offense other than the one charged; therefore, to prevail on appeal he must establish that the trial court had a duty to instruct on the other offenses on its own motion. Defendant's argument fails in this regard.

Before we discuss whether the trial court erred by not giving the instructions, we must address a mistaken impression on defendant's part. He argues in both his opening and reply briefs that the trial court erred, in part, because the evidence at trial supported giving the instructions he now claims should have been given. In his opening brief, he states: "The facts in [defendant's] case support the giving of all three of the above-noted lesser offenses [*sic*], all of which are factually included in the evidence and the charged violation [of] Health and Safety Code section 11383.5." In his reply brief, he further states: "There is substantial evidence supporting the giving of the lesser instructions." While it is true that a trial court need not instruct on a lesser offense that is not supported by substantial evidence, there is no duty to instruct on all offenses supported by the evidence. Therefore, the fact that there was substantial evidence of an offense does not

3

support an argument that the trial court had a duty to instruct the jury on that offense if that offense was not necessarily included in the charged offense. In other words, there is no duty for the trial court to instruct, on its own motion, concerning related offenses supported by the evidence. (*People v. Birks, supra,* 19 Cal.4th at pp. 130-131.)

Instead of focusing on what the evidence supported (at least at the outset of our analysis), we focus on the charged crime and what elements are necessarily included in that offense. (*People v. Birks, supra,* 19 Cal.4th at pp. 117-118.) Here, the charged crime was a violation of Health and Safety Code section 11383.5, subdivision (b)(1), which states, in pertinent part: "Any person who, with the intent to manufacture methamphetamine, . . . possesses . . . pseudoephedrine, . . . is guilty of a felony . . . ." Thus, the elements of the crime are: (1) possession of pseudoephedrine and (2) intent to use the pseudoephedrine to manufacture methamphetamine. (CALCRIM No. 2337, given to the jury in this case.) Considering that there are only two elements of the crime charged, which proposition defendant agrees with as stated in his opening brief, it is immediately apparent that, if a crime is to be necessarily included in the crime charged, it can, as a logical matter, have only one element -- either possession of pseudoephedrine *or* intent to manufacture methamphetamine. But neither of these elements, alone, is a crime. Therefore, under the elements test, the crime charged (a violation of Health & Saf. Code, § 11383.5) has no necessarily included offenses.

Defendant makes no attempt to apply the accusatory pleading test to the question of whether the trial court had a duty to instruct on lesser included offenses. Therefore, we need not discuss that test. (In any event, the crime was charged in language substantially similar to the statutory language.)

With these principles in mind, we consider each of the crimes defendant claims were lesser included offenses of the charged offense.

Defendant first claims that an attempt to commit the crime was a lesser included offense and, therefore, the trial court should have instructed on attempt. In support of this

proposition, defendant states that the trial court, after instructing the jury and sending it off to deliberate, worried that it should have instructed on attempt as a lesser included offense. That the trial court thought it might have erred, however, does not support an argument on appeal that the trial court actually erred.

An attempt to commit a crime is generally not a lesser included offense of the substantive crime because the attempt requires that the person have the specific intent to commit the crime. (See, e.g., *People v. Bailey* (2012) 54 Cal.4th 740, 749-750 [specific intent to escape an element of attempt to escape].) Here, while there was an element of specific intent involved -- that is, to manufacture methamphetamine -- there was no specific intent required to possess the pseudoephedrine. But to prove that defendant *attempted* to possess pseudoephedrine with intent to manufacture methamphetamine, the prosecution would have been required to prove *the additional element* that defendant had the specific intent to possess the pseudoephedrine. (See *ibid*.) Accordingly, even if defendant had not based his argument on the trial court's belief that it may have erred, defendant's argument that the trial court erred by not instructing on attempt to commit the charged offense would have been without merit.

Defendant's second and third assertions of included offenses on which the trial court had a duty to instruct are based on the same argument, which fails. Defendant notes that the Legislature has criminalized the various steps toward manufacturing methamphetamine. He cites *People v. Perez* (2005) 35 Cal.4th 1219, a case discussing those steps and the statutes criminalizing those steps. The court stated: "In the case where A supplies precursors to B, who manufactures methamphetamine, there are in essence four sequential steps: (1) A possesses the precursors, with the intent to sell or transfer them for manufacture; (2) A sells or transfers them to B, with the knowledge or intent that B will manufacture; (3) B possesses them with the intent to manufacture; and (4) B manufactures. The Legislature has enacted a series of statutes that separately address these steps in the manufacturing chain." (*Id*. at p. 1229.) The court reviewed the

5

statutes making each step a criminal act, and the court observed: "These statutes generally reflect a legislative judgment that each successive step that moves closer to the actual manufacture of methamphetamine is a more serious crime meriting increased punishment . . . ." (*Ibid.*)

Defendant surmises that, since each step in the process toward manufacture of methamphetamine is more serious than the previous step, the previous step is a lesser included offense of the next step. Therefore, according to defendant, possession of pseudoephedrine with intent to sell for manufacture of methamphetamine (step 1) (Health & Saf. Code, § 11383.7, subd. (b)(1)) and furnishing pseudoephedrine with knowledge that the recipient will manufacture a controlled substance (step 2) (Health & Saf. Code, § 11104, subd. (a)) are lesser included offenses of the offense charged in this case -- possession of pseudoephedrine with intent to manufacture methamphetamine (step 3).

*Perez*, however, did not hold that the previous steps in the sequence are included offenses in the later steps. It did not discuss the concept of lesser included offenses at all. Furthermore, the additional elements of the other crimes that defendant now claims should have been presented to the jury defeat an argument that they are lesser included offenses of the charged offense: one requires the intent to sell (Health & Saf. Code, § 11383.7, subd. (b)(1)) and the other requires furnishing of pseudoephedrine and knowledge that a recipient of the pseudoephedrine will use it to manufacture methamphetamine (Health & Saf. Code, § 11104, subd. (a)). Since those are not elements of the charged offense, the trial court had no duty to instruct on the other offenses.

Defendant's contention that the trial court had a duty to instruct on other offenses, on its own motion, is without merit.

## II

### *Custodial Interrogation*

6

Defendant was detained when the car in which he was a passenger was stopped by an officer because the driver, Jeffrey Longmire, was suspected of manufacturing methamphetamine. After defendant was handcuffed and placed in the back of a patrol car, he made statements (which were recorded) to the officer. Later, the officer arrested defendant and gave him a *Miranda* advisement.[1] At trial, defendant moved to suppress statements he made to the officer before the *Miranda* advisement, claiming that the statements were part of a custodial interrogation. The trial court denied the motion, finding that defendant was not in custody at the time. On appeal, defendant renews his objection to admission of the preadvisement statements. We conclude the trial court did not err.

A.      *Relevant Law*

In *Miranda*, the United States Supreme court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda*, *supra*, 384 U.S. at p. 444, fn. omitted.)

"Custody determinations are resolved by an objective standard: Would a reasonable person interpret the restraints used by the police as tantamount to a formal arrest? (*Berkemer*[ *v. McCarty* (1984)] 468 U.S.[ 420,] 442 [82 L.Ed.2d 317, 336]; *People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1161.) The totality of the circumstances surrounding an incident must be considered as a whole. (*People v. Boyer* (1989) 48 Cal.3d 247, 272, disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th

---

[1]      *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

7

824, 830, fn. 1.)  Although no one factor is controlling, the following circumstances should be considered:  '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.)  Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview.  (*Aguilera*, at p. 1162.)"  (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404, fn. omitted.)

B.    *Facts*

Officer Cogle stopped the car being driven by Longmire because Officer Cogle suspected Longmire was operating a methamphetamine manufacturing operation. Several officers arrived at the scene of the stop.  Other people were in Longmire's car, including defendant, who was in the front passenger seat.  A firearm was found on the floorboard under the driver's seat.  For officer safety, the occupants of the car, including defendant, were removed from the car and handcuffed, and defendant was placed in the backseat of Officer Cogle's car.  Officer Cogle told defendant that he was not under arrest and that the officers were just trying to figure out what was going on.  About five minutes after defendant was placed in the backseat and after the officers stabilized the situation by handcuffing and detaining all of the car's occupants, Officer Cogle went to talk to defendant, who was not formally under arrest at the time.  The investigation, at that point, was focused on Longmire.

Inside Officer Cogle's car, defendant initiated the conversation, trying to determine whether Officer Cogle was someone defendant had heard about before.

8

Officer Cogle asked about defendant's name and inquired whether defendant knew that, when someone buys "pills," they must sign for them. Defendant said that he had bought the pills three times a month but never made methamphetamine with them. He also said, in response to questions, that he bought the pills and gave them to Longmire who would, in return, let defendant "smoke a bowl." Further responding to questions, defendant told Officer Cogle that he had been using methamphetamine for 15 years but was not addicted. He also answered questions about Longmire's manufacturing activities and how he had helped Longmire by buying the pseudoephedrine. The conversation was recorded, and a double-spaced transcript of the conversation is only about six pages long, indicating that it was brief.

The conversation ended, and Officer Cogle left the patrol car, returning about 10 minutes later to arrest defendant.

C. *Analysis*

We conclude defendant was not in custody when he made the preadvisement statements; therefore, his claim of a *Miranda* violation is without merit. Although defendant was handcuffed and detained in the backseat of Officer Cogle's patrol car, the circumstances otherwise would not lead a reasonable person to interpret the restraints used by the police as tantamount to a formal arrest. (*People v. Pilster, supra,* 138 Cal.App.4th at p. 1403.)

At the time defendant made the statements in question, he was not formally under arrest, and he had been told that the officers were trying to figure out what was going on. Everyone in Longmire's car had been similarly detained. The conversation between Officer Cogle and defendant took place just five minutes into defendant's detention. The tenor of the conversation, which was initiated by defendant, was light, not accusative or aggressive. Also, the conversation was relatively brief, lasting just a few minutes. Under the totality of these circumstances, the trial court did not err in concluding that there was

9

no custodial interrogation, even though defendant was handcuffed and detained in the patrol car when it occurred.

Therefore, defendant's assertion that the statements should have been excluded is without merit.

III

*Sufficiency of Evidence*

As we noted, the two elements of the crime for which defendant was convicted are possession of pseudoephedrine and intent to manufacture methamphetamine. Defendant contends that the evidence was insufficient for the jury to conclude that he possessed the pseudoephedrine. The contention is without merit.

A.      *Relevant Law*

" 'To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find defendant guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.' [Citation.]" (*People v. Carpenter* (1997) 15 Cal.4th 312, 387, quoting *People v. Johnson* (1993) 6 Cal.4th 1, 38; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-574].)

"The essential elements of the offense of unlawful possession of a controlled substance are actual or constructive possession in an amount sufficient to be used as a controlled substance with knowledge of its presence and its nature as a controlled substance. The elements may be proven by circumstantial evidence. [Citations.]

"Actual or constructive possession is the right to exercise dominion and control over the contraband or the right to exercise dominion and control over the place where it is found. [Citation.] Exclusive possession is not necessary. A defendant does not avoid

10

conviction if his right to exercise dominion and control over the place where the contraband was located is shared with others.  [Citations.]"  (*People v. Rushing* (1989) 209 Cal.App.3d 618, 621-622.)

B.    *Analysis*

Defendant argues the evidence that he possessed the pseudoephedrine was insufficient because the evidence showed that (1) he had previously purchased pseudoephedrine tablets for Longmire, (2) the tablets were in Longmire's car, and (3) the tablets had already been transferred to Longmire. According to defendant, this means he had no dominion or control over the pseudoephedrine. This argument fails because (1) the evidence did not require the jury to find that the pseudoephedrine had already been transferred to Longmire and (2) the evidence was sufficient, in any event, to show that Longmire and defendant jointly possessed the pseudoephedrine at the time of the traffic stop. Also, as the Attorney General additionally argued, the evidence was sufficient to establish that defendant aided and abetted Longmire's possession of pseudoephedrine with intent to manufacture methamphetamine.

Defendant is wrong that the evidence necessarily showed that defendant had already transferred the pseudoephedrine to Longmire at the time of the traffic stop. The evidence supported a reasonable inference that defendant bought the pseudoephedrine tablets and that the tablets were still within his immediate control when Longmire was pulled over. Defendant was seated in the front passenger seat, and the tablets were found around where he was sitting. In his reply brief, defendant asserts that it is "questionable" whether he exercised dominion or control over the contents of Longmire's car, but whether it was questionable is not the standard for a sufficiency-of-evidence review. Here, there was substantial evidence supporting reasonable inferences by the jury that defendant bought the pseudoephedrine tablets found in Longmire's car and had dominion and control over the tablets found in his immediate presence.

The fact that defendant purchased the tablets intending to turn them over to Longmire does not change this analysis. The tablets were still in defendant's immediate presence and control, and the jury could infer that defendant still possessed them.

12

Furthermore, the jury could have found defendant guilty based on his aiding and abetting Longmire.  The jury was instructed on aiding and abetting, including the four requirements that (1) someone committed the crime, (2) defendant knew he intended to commit the crime, (3) defendant intended to aid in its commission, and (4) defendant's acts in fact aided in its commission.  (CALCRIM Nos. 400, 401.)  Defendant, himself, contends that the evidence showed that Longmire possessed the pseudoephedrine, and the evidence was overwhelming that Longmire intended to use it to manufacture methamphetamine.  Defendant was well aware of Longmire's intention and aided and abetted by supplying the pseudoephedrine.  Therefore, the jury's verdict may also be upheld based on the aiding and abetting theory.

Finally, defendant argues that the evidence was insufficient to establish that defendant was in constructive possession of the pseudoephedrine.  We need not consider this argument because the evidence was sufficient that defendant was in actual possession of the pseudoephedrine.

DISPOSITION

The judgment is affirmed.


        NICHOLSON        , J.



We concur:



        RAYE        , P. J.



        BLEASE        , J.


13